Judgment rendered October 5, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 54,585-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

Versus

MARQUIS MOSS                                Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 364980

Honorable John D. Mosely, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By: Lieu T. Vo Clark

JAMES E. STEWART, SR.                  Counsel for Appellee
District Attorney

TOMMY J. JOHNSON
SENAE E. HALL
MEKISHA SMITH CREAL
Assistant District Attorneys

* * * * *

Before PITMAN, STONE, and STEPHENS, JJ.

**STEPHENS, J.**

This criminal appeal arises out of the First Judicial District Court in and for the Parish of Caddo, State of Louisiana, Honorable John Mosely, Jr., presiding. Defendant, Marquis Moss, was convicted of one count of armed robbery, a violation of La. R.S. 14:64, by a unanimous jury, and was sentenced to 50 years at hard labor on August 31, 2021. This sentence was ordered to run consecutively to any other sentence he was required to serve. A motion to reconsider sentence was filed by Moss on September 1, 2021, and denied by the trial court the next day. Defendant has appealed, urging that his sentence is excessive.[1] For the reasons set forth below, we affirm defendant's conviction, vacate the sentence, and remand for resentencing.

## FACTS/PROCEDURAL HISTORY

During the evening of February 8, 2019, Deirdre Weller, a Lyft driver, was parked in a parking spot near the railroad tracks between the Hustler Club and the Sam's Town Casino parking garage in Shreveport, Louisiana, awaiting potential ride requests. As she was scrolling through her phone, not paying attention, a black male approached her and asked her for a light, but was told she didn't smoke. He asked her what she was doing; Deirdre explained she was a Lyft driver. The man then opened the door, got into her car, and asked her to "take him up the road for $15." Deirdre told the man she would, because, "I mean, what else am I going to do to get him out of my car[?]"

---

[1] Defendant also assigned as error the trial court's denial of his motion to reconsider sentence, but did not support this assertion with any argument in his appellate brief. Thus, this issue will not be addressed.

As she drove, Deirdre attempted to activate the emergency button on her Lyft app to notify police, but the man snatched her phone away and put a gun in his lap, pointed toward her. The man then told her to take him to Monkhouse Drive. She related that she didn't have enough gas to do that, and he told her to keep driving. The gun was still facing her, in the man's lap, as he gave her directions and she drove. The man told Deirdre he had just come from the casino and had lost all of his money and was going to the strip club. However, they drove under I-20 toward Youree Drive, making "small talk."

Although Deirdre told the man she knew where they were going, she did not, being unfamiliar with the area. He kept giving her directions. She was terrified; all she could think about was getting home to her children. They were going down a road that looked like an alley but was mostly wooded and deserted. The man told her to put her car in park. He asked Deirdre where the money was, and when she told him she was paid through an app, he told her to move over, he was taking her car. The man told her to "get the f*ck out." As she did so, he kept the gun pointed at her and told her to get on her knees. Deirdre complied, looked him dead in the eyes and told him about her small children at home, pleading for her life. The man didn't say anything, looked around, as if to see whether anyone else was around, then closed the car door and drove off in her car, which contained both her purse and iPhone. Deirdre was able to flag down a passing motorist; she told him everything that had happened, and the man pulled over, let her into his car, and called 911 for her.

During the investigation, Deirdre described her assailant to the investigating officer as a black male, approximately six feet tall, wearing a

2

black do-rag, dark hoodie, dark pants and black latex gloves. She also stated that he had some facial hair, like a mustache and a goatee. Using surveillance video from nearby businesses, police officers developed Moss as a suspect. When she was presented with a photo lineup, Deirdre positively identified Moss as the man who took her vehicle that night.

Deirdre testified to the effects this event had on her life. For several months afterward, she slept on a mattress in her living room with a bat beside her, with all of her family members where she could see them as well as her front and back doors. Deirdre wouldn't leave the house unless her friends came and made her. Her relationship was affected because the police kept the car, and there was no way her fiancé could get to work without their vehicle.

Deirdre was concerned for her own safety and that of her whole family whenever they left the house. Even after she got the car back, for a long time she was terrified of the dark in her own car. She couldn't drive at night for a long time. She sought counseling. She suffers from PTSD and anxiety for which she takes medication daily. Deirdre expressed that the man, whom she identified in court as the defendant, took away her pride when he made her beg for her life on her knees that day. She was certain in her identification of the man because there were streetlights above them in the alley, and she looked him "dead in the eyes."

Moss was arrested and charged by bill of information with armed robbery, a violation of La. R.S. 14:64, and second-degree kidnapping, a violation of La. R.S. 14:44.1. He was arraigned and pled not guilty to the charges on April 18, 2019. A jury trial was held on July 26-30, 2021. A

3

unanimous jury returned a verdict of guilty of armed robbery and not guilty of second-degree kidnapping.

Moss filed motions for new trial and post-verdict judgment of acquittal, which were denied by the trial court on August 31, 2021. Moss waived his sentencing delays, and on that same date, the trial court sentenced him to 50 years at hard labor to be served consecutively with any other sentence he is required to serve. Defendant filed a motion to reconsider sentence, which was denied by the trial court on September 2, 2021. Defendant has appealed, urging excessiveness of his 50-year sentence.

## DISCUSSION

Moss urges that his 50-year sentence, ordered to be served consecutively with a federal sentence of 115 months that he received for the firearm that was used in this offense, is essentially a life sentence as applied to him.[2]

### *Error Patent Review*

We find, upon a review for errors patent, that the sentence imposed is indeterminate as a result of the fact that it was imposed "to run consecutively with any other sentence *you're required to serve*." Words matter. This is not sufficiently indicative of the fact that the 50-year sentence was intended to run consecutively with Moss's *previously imposed* sentence(s). La. C. Cr. P. art. 879 provides that if a defendant who has been convicted of an offense is sentenced to imprisonment, the court shall impose a determinate sentence.

---

[2] The trial court actually ordered that the 50-year sentence being imposed for armed robbery was to run "consecutively with any other sentence you're required to serve." Based upon our determination that, as enhanced, the sentence is indeterminate, we do not reach the issue of whether Moss's sentence is excessive.

The judge asked about the defendant's criminal history at sentencing. Defense counsel related that her client "***is currently serving***—I believe it's 115 months federal time in relation to the gun that was recovered in this matter, Your Honor." State's attorney noted, "[Moss] had an attempted distribution of false CDS in 2011 and –yes, a carnal knowledge of a juvenile in 2013. Outside of that, it's the federal charge for the gun." Because there was no presentence investigation report prepared or ordered, apparently, the trial judge had to rely only on the above information provided by counsel.

Nonetheless, the trial judge, in sentencing defendant, did not specify that the 50-year sentence for armed robbery was to run consecutively **with any sentence(s) he was currently serving**. We therefore vacate his sentence and remand this matter for clarification. *See*, *State v. Wiley*, 16-645 (La. App. 5 Cir. 4/12/17), 216 So.3d 393, 400; *see also State v. Jones*, 13-367, at p. 9, (La. App. 5 Cir. 12/27/13), 131 So.3d 1065, 1070 (wherein the Fifth Circuit recognized this distinction in sentencing, finding that the "open-ended" statement that a sentence be served with "any other sentence" is distinguishable from a sentence ordered to be served concurrently with "any sentence [the defendant] may be serving," requiring correction.) Accordingly, we vacate defendant's sentence and remand this matter to the trial court to clarify defendant's sentence.

**CONCLUSION**

For the reasons set forth above, the defendant's conviction is affirmed. The sentence is vacated, and the matter is remanded for resentencing.

**CONVICTION AFFIRMED; SENTENCE VACATED, REMANDED.**